# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

## STATE OF MAINE.

---

GEORGE W. MERRILL FURNITURE COMPANY

*vs.*

GEORGE F. HILL.

Penobscot.   Opinion August 29, 1894.

*Sales.   Delivery.   Waiver.   Subsequent Purchaser.*

In a contract for the sale of personal property, where no agreement is made as to credit, the law presumes that the parties intended to make the payment of the purchase price and the delivery of possession concurrent conditions. The vendor has the right to retain possession until the purchaser is ready to perform his part of the contract. Or, if the goods have been delivered with the expectation of immediate payment, and this condition is not performed, the vendor may retake possession of the same.

But although a sale of this character is conditional and a vendor has a right to retain possession or to retake it under certain circumstances, these rights may be waived by him, in which case the sale becomes absolute and the title vests in the purchaser.

The mere fact of delivery, without a performance of the condition of payment, is some evidence of a waiver of this condition. It may be controlled or explained by other facts and circumstances, but this, with all of the other evidence in the case, should be submitted to the jury upon the question of waiver.

Where the property passed by delivery in the first instance, an unrecorded instrument made two months later, purporting that the title should remain in the vendor and that the property was leased to the vendee for a stipulated monthly rental until a particular sum in all was paid, when the payments should be treated as purchase money and the title pass, is ineffectual against an innocent purchaser for value without notice.

ON EXCEPTIONS.

This was an action of replevin, begun August 23, 1892, to recover two settees manufactured by the plaintiff for one Coburn, proprietor of the Penobscot Exchange, Bangor, and delivered at his hotel in the spring of 1891. The defendant as vendee of Coburn, in September following, claimed that the title to the settees had passed to Coburn ; and that it was a question of fact for the jury to determine whether or not there was a sale and delivery and whether or not the title passed from the original vendors to the original vendee.

Plaintiff put in evidence the following documents :

"October 5, 1891.

"Mr. F. W. Coburn,   to G. W. Merrill & Co., Dr.

| | | |
|---|---|---|
| April 25, | To merchandise as per bill rendered, | $51.00 |
| July 25, | By cash to date, | 20.00 |
| | | $31.00 |

(Copy of Document called Lease in the Testimony )

"Bangor, April 25, 1891.

"Mr. F. W. Coburn this day hired and received of G. W. Merrill Furniture Co.,

| | |
|---|---|
| One oak settee, leather, ten feet, | $35.00 |
| One cherry settee, carpet, eight feet, | $16.00 |
| | $51.00 |

"For the use of which I promise to pay the said G. W. Merrill Furniture Company, ten dollars on the receipt of the above furniture, and the further sum of ten dollars for each and every month I shall keep the same ; and the said furniture to be returned to them on demand, and not to be removed without the written consent of G. W. Merrill Furniture Company. Provided, however, that if I shall well and truly make all said payments in manner as aforesaid until the same shall amount to the full sum of fifty-one dollars, which sum is the estimated value of said property, then said sums are to be treated as purchase money and said property is to become mine, otherwise the same is to be and remain at all times the property of said G. W. Merrill Furniture Company, with the right to take the

same without process of law and entering my premises therefor without hindrance from F. W. Coburn.

F. W. Coburn."

"Witness, N. W. Littlefield."

N. W. Littlefield, called by plaintiff, testified as follows:

"Mr. Coburn came to our store about the 20th of March, 1891, and wanted two settees, one upholstered in leather ten feet, and the other eight feet, upholstered in carpet. They were made and delivered. They were made and delivered as all sales are and considered cash payment. We made the settees and took them over there and in a week or ten days afterwards I sent the bill. About three weeks afterwards the money had not come in and I sent our boy over once or twice to Mr. Coburn to collect the bill. After that, along in April, about the 20th, I went over and saw Mr. Coburn myself. He was 'very sorry,' he said, 'but he could not pay that bill to-day.' 'All right,' I said. He said, 'come in again in about a week.' I went over in about a week and he could not pay it then. I said: 'Mr. Coburn, I think the best way is to give a lease and you pay us ten dollars down and ten every month thereafter until it is paid up.' He said: 'All right,' he would do it. I went over and met him the 19th of June, and he paid me ten dollars, and I took it over to the store. When the month came round he could not pay, but he paid five dollars July 22, and when we went over next time he paid five dollars more; and that was all that was paid when Mr. Hill took the house. The settees that are replevied, and returned to us, are the same ones that we delivered to Mr. Coburn. They are in our office now."

The presiding justice gave the following, among other, instructions to the jury: "These goods were delivered and there is no evidence that there was any particular time for payment, and therefore, the presumption is that the payment was due immediately. It went along. Mr. Hill was not the purchaser before this document, which they call a lease, was taken. Now, the seller, claiming that he had not lost the title to the property, and relying upon his first conditional contract, makes another and different conditional contract. It would have been more

appropriate if it had been signed by Merrill and the other party, but it is the same in effect. They make another conditional document. It is not a lease, but a conditional sale. It was an agreement between these parties, that the seller had the title and should keep the title until he got his pay in a certain manner of payments in the instrument named. Now, my idea is that they could substitute that old contract for the new, nothing intervening. Had Mr. Hill come in before, in my mind, that would have been another thing; but his purchase was made subsequent, and the tenor of the contract is that the seller holds the title and the buyer does not have it, and is not to have it until he makes full payment. Now, this manner of keeping the accounts is not inconsistent with this; it is buying, and he did buy, if the witness is not questioned, on the date which he took it. They used the word 'lease' in it, but they got no particular rights under that phraseology.

"Mr. Merrill cannot take and keep this property, because Mr. Coburn and Mr. Hill under him can go and take the property by paying the amount due. There is no forfeiture. Now, then, if Mr. Merrill and others — his firm — agreed to manufacture and deliver, and did manufacture and deliver, and made no waiver, by any agreement, of his lien upon the property until he got his pay, and it ran along even from April till June, and then they substituted this new contract for the old one, my opinion as matter of law, is that that contract holds the property until they have got the pay according to the agreement, the original price. . . .

"There is a distinction. They sold in one way and they substituted a new bargain before any purchaser or innocent person became interested in the property, and I think Mr. Hill's purchase afterwards makes no difference. . . . If you believe the testimony, I do not see any other way but to give a verdict for the plaintiff."

Other facts are stated in the opinion.

*A. L. Simpson,* for plaintiff.

Up to April 25th the only trade which had been made between

the parties was that the plaintiff should manufacture the settees for Coburn and as he had not asked for any credit and as no credit had been given, the settees remained the property of the plaintiff; the title still remained in him the same as in *Stone* v. *Perry*, 60 Maine, 48; *Seed* v. *Lord*, 66 Maine, 580. Coburn then as well as the plaintiff regarded the title to the settees in the plaintiff; their acts and the agreement prove conclusively that both parties considered the title in the plaintiff.

At the time the agreement was made between Coburn and the plaintiff, the title to the settees being in the plaintiff, they had a right to make any agreement in relation to the disposition of them that they pleased; and they made this conditional agreement with Coburn and he signed it.

Defendant has no occasion to complain of this agreement, for his rights were not interfered with in making the agreement; at that time he had not acquired any rights or interest in any of the property or furniture in the hotel.

This agreement having been made a long time before he made any purchase of any of the furniture in the hotel he could not have been affected by it. It was not for the plaintiff to notify him that he was the owner of the settees, for he could not be supposed to believe that Coburn would attempt to sell that which he did not own. It was the duty of the defendant to inquire into the title of the property that he was purchasing. *Caveat emptor* applies.

As Coburn did not have the title to the settees he could not give any title to the defendant. He might have fulfilled the agreement made by Coburn with the plaintiff and in that way acquired title to the settees.

Counsel also cited: *Gross* v. *Jordan*, 83 Maine, 380.

*H. P. Haynes, A. W. Wetherbee,* with him, for defendant.

SITTING: LIBBEY, FOSTER, HASKELL, WHITEHOUSE, WISWELL, JJ.

WISWELL, J. On about March twentieth, 1891, one Coburn, then the proprietor of a hotel in Bangor, ordered of the plaintiffs

two settees, the property replevied, the same to be manufactured by the plaintiffs. On the twenty-fifth of April following, the settees having been completed were delivered at the hotel occupied by Coburn. Between that time and the nineteenth of the following June the plaintiffs called upon Coburn at various times for the purpose of collecting the pay for these articles, and on the latter date, nothing having been paid up to that time, and Coburn being still unable to pay, one of the plaintiffs proposed that Coburn should sign the written instrument called by the witnesses a lease, but in fact a contract providing that Coburn should pay the plaintiff ten dollars per month for the use of the articles until the sum of fifty-one dollars was paid, when the sums so paid should be treated as purchase money and the property pass to Coburn. This instrument was never recorded.

In the month of September following, the defendant bought these settees, with other hotel furnishings, of Coburn without notice of any claim upon them of the plaintiffs. The plaintiffs brought this action of replevin to recover possession of these settees.

The presiding justice instructed the jury that the question was principally if not altogether of law, and at the close of the charge said, "If you believe the testimony, I do not see any other way but to give a verdict for the plaintiffs." An examination of the evidence will show that this was in effect a direction to return a verdict for the plaintiffs.

At the time the goods were ordered, nothing was said about the time of payment and no agreement was made by the plaintiffs to give credit; under these circumstances the law presumes that the parties intended to make the payment of the price and the delivery of the possession concurrent conditions. The plaintiffs would have had the right to retain possession until the purchaser had been ready to perform his part of the contract. Or, if the goods had been delivered with the expectation of immediate payment, and this had not been done, the plaintiffs had the right to retake possession of the goods.

But although a sale of this character is conditional and a ven-

dor has the right to retain possession or to retake possession under certain circumstances, the vendor may waive the conditions and these rights, in which case the sale becomes absolute and the title vests in the purchaser. *Peabody* v. *McGuire*, 79 Maine, 572.

The mere fact of delivery without a performance of the condition of payment is some evidence of a waiver of the condition. The rule that prevails in this State is thus stated in *Peabody* v. *McGuire, supra*: "But the doctrine which has the support of our own court upon this question, and which seems to be the correct and rational one, is, that even in a conditional sale the mere fact of delivery, without a performance by the purchaser of the terms and conditions of sale, and without anything being said about the condition, although it may afford presumptive evidence of an absolute delivery and of a waiver of the condition, yet it may be controlled and explained, and is not necessarily an absolute delivery or waiver of the condition; but whether so or not is a question of fact to be ascertained from the testimony."

In this case there was a delivery of the goods "without a performance by the purchaser of the terms and conditions of sale, and, without anything being said about the condition," this was some evidence of a waiver by the plaintiffs of their rights. It might be controlled or explained by other circumstances, but we think that it was a question for the jury and that it was error to direct, in effect, a verdict for the plaintiffs.

If the evidence was such that a verdict for the defendant would have been so clearly erroneous as to require it to be set aside, then the defendant could not complain of the instruction, but we do not think that such is the case. There are undoubtedly circumstances which have some bearing in favor of the contention on each side. For instance, one of the plaintiffs, and the one who had most to do with the transaction, testified upon cross-examination that when the goods were delivered he considered Mr. Coburn good and "expected the cash in thirty days." From this evidence, taken in connection with the unrestricted delivery, the jury would have been authorized in finding a waiver.

If the property passed by delivery, then the unrecorded instrument executed upon June nineteenth, but bearing date of April twenty-fifth, was ineffectual to give the plaintiffs any claim upon these goods as against the defendant; upon the other hand if the title did not pass, the parties merely substituted one conditional contract for another, as they might with propriety have done. So the case depends entirely upon the question of fact as to whether or not the property passed at the time of delivery. This issue, we think, should have been submitted to the jury.

*Exceptions sustained.*