## HIGGINS et al. v. CALIFORNIA PRUNE & APRICOT GROWERS, Inc.

(Circuit Court of Appeals, Second Circuit. December 13, 1926.)

No. 103.

**1. Appeal and error ☞1002—Finding of jury on disputed evidence is conclusive on appellate court.**

Finding of jury on disputed evidence is conclusive on appellate court.

**2. Sales ☞201(4)—On sale f. o. b. shipping point, title passed on seller's delivery to carrier.**

On sale f. o. b. dock at port named, or f. o. b. interior points named, delivery was complete and title passed on seller's delivery to carrier at inland points, or at latest on delivery at steamship dock.

**3. Sales ☞176(3)—Buyer's failure to object to method of delivery may be deemed waiver thereof.**

Where buyer's only objection was to price and demand for revision thereof, objections as to method of delivery could have been deemed waived at trial.

**4. Sales ☞177—Only absolute refusal to go on constitutes buyer's repudiation of contract.**

To warrant finding of buyer's repudiation of contract, evidence must disclose definite and unequivocal refusal to go on with contract.

**5. Sales ☞381—Burden is on seller to show reasonable efforts to resell on buyer's rejection, where title has not passed.**

On buyer's breach, where title has not passed and goods have not been accepted, seller must make reasonable efforts to resell and obtain best price, and burden is on seller to show it has done so.

**6. Sales ☞315, 340—Unpaid seller is entitled to recover purchase price on buyer's breach, where title has passed, and to resell under his lien (Personal Property Law N. Y. § 144 [as amended by Laws 1925, c. 560]).**

Under Personal Property Law N. Y. (Consol. Laws, c. 41) § 144, as amended by Laws 1925, c. 560, where title has passed

and buyer refuses to pay, seller is entitled to recover purchase price, and he has lien for price, if goods are in his possession, with right of resale.

**7. Sales ☞315—Buyer held entitled to credit for amount realized on resale after title passed to enforce seller's lien (Personal Property Law N. Y. § 141, and section 144, as amended by Laws 1925, c. 560).**

Under Personal Property Law N. Y. (Consol. Laws, c. 41) § 141, and section 144, as amended by Laws 1925, c. 560, where seller resold goods to enforce his lien, on buyer's refusal to accept goods after title passed, buyer was entitled to have amount realized on resale credited on purchase price, and was not required to elect whether to accept such proceeds.

**8. Sales ☞315—Seller must wait reasonable time before reselling to enforce his lien, where title has passed (Personal Property Law N. Y. § 141).**

Under Personal Property Law N. Y. (Consol. Laws, c. 41) § 141, seller is obliged to wait reasonable time before reselling goods to enforce his lien, where title has passed, until it is clear buyer will not take and pay for goods.

**9. Sales ☞315—Buyer's damages from seller's resale can only be asserted in separate action, or by counterclaim to seller's action for price (Personal Property Law N. Y. § 141, and section 144, as amended by Laws 1925, c. 560).**

Buyer's claim to damages resulting from seller's bad faith in reselling goods to enforce his lien after title has passed under Personal Property Law N. Y. (Consol. Laws, c. 41) § 141, and section 144, as amended by Laws 1925, c. 560, may only be asserted in separate action or by counterclaim to seller's action for goods sold and delivered.

**10. Sales ☞315—Burden of proof is on buyer, claiming damages or seller's resale (Personal Property Law N. Y. § 141, and section 144, as amended by Laws 1925, c. 560).**

Burden of proof is on buyer, claiming damages for seller's unfair and improper sale to enforce his lien after title has passed, under Personal Property Law N. Y. (Consol. Laws, c. 41) § 141, and section 144, as amended by Laws 1925, c. 560.

**11. Sales ☞315—Statute held to confer right on seller to resell, and not to impose duty (Personal Property Law N. Y. § 141, and section 144, as amended by Laws 1925, c. 560).**

Personal Property Law N. Y. (Consol. Laws, c. 41) § 141, and section 144, as amended by Laws 1925, c. 560, authorizing resale by seller to enforce lien after title has passed, confers a right and does not impose duty to resell.

**12. Monopolies ☞23—That seller is monopoly held not to affect its right to recover on its sales contracts not affected by unlawful conspiracy.**

That seller is unlawful monopoly does not affect its right to recover on contracts for sale of its products not connected with nor inherent part of any conspiracy to restrain trade.

In Error to the District Court of the United States for the Southern District of New York.

Action by the California Prune & Apricot Growers, Incorporated, against William A. Higgins and another, as copartners. Judgment for plaintiff, and defendants bring error. Affirmed conditionally.

Myers, Goldsmith & Behr, of New York City, and John W. Preston, of San Francisco, Cal., for plaintiffs in error.

Pitkin & Rosensohn, of New York City, for defendant in error.

Before MANTON and MACK, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

MANTON, Circuit Judge. On August 12, 1920, the plaintiffs in error purchased, by written contract, from defendant in error, 34 carloads of dried prunes. The contract called for the delivery in the fall of 1920, and the price was fixed, "firm at seller's opening price, said price guaranteed against seller's own decline until January 1, 1921." The price was definitely fixed on August 11th, and notice thereof was received by the buyer before the execution of the contract on August 12th. One carload was delivered, accepted, and paid for. This action is for the contract price of the 33 carloads, and the pleading sets forth 33 causes of action, which are substantially alike.

A typical form of pleading for each cause of action sets forth the making of the contract, naming and fixing of the price, the terms of delivery, delivery, the presentation of the draft and shipping documents, and refusal to pay. It alleges that the title to the goods passed to the plaintiffs in error, due performance by the defendant in error, that after a reasonable time, upon refusal of acceptance by the plaintiffs in error, the goods were sold, and judgment was demanded for the difference between the aggregate purchase prices of the 33 carloads and the aggregate proceeds of the resales, with interest.

In addition to the denials of allegations of the complaint, the amended answer sets forth 13 separate defenses and a counterclaim. Among the defenses pleaded, which required consideration, is the alleged repudiation of the contract, and fraud and misrepresentations made, resulting in making of the contract; also that the goods were not sold by the defendant in error within a reasonable time, and that this delay increased the damages sustained. The counterclaim sets forth a violation of the anti-trust law, and damages are demanded in the sum of $300,000. This is based upon the theory that the defendant in error had created an unlawful monopoly in the prune industry in California, and so interfered with the free flow of commerce as to result in damages to these plaintiffs in error.

The defendant in error is a co-operative marketing association for members who are engaged in prune raising. One of its directors is appointed by the Governor of California. The plaintiffs in error are dealers, engaged in business in New York City, selling California dried fruits. The making of the contract is not disputed. By its terms, delivery was to be made "f. o. b. Pacific Coast rail shipping point," and payment against draft with shipping documents; the risk of loss, shortage, and delay rested upon the buyer. In case of change from rail shipment to water shipment, the provisions of the contract known as the "Dried Fruit Association of California water shipment contract" applied. Some of this product was shipped by water, and the shipping contract is in evidence. It is stipulated that, as to such shipments, this water shipment contract applied.

Deliveries of 8 carloads were made by the steamer Steelmaker, 4 carloads by the steamer Lavada, and the balance of 21 carloads by rail shipments. The objection of the plaintiffs in error to these shipments is that those of the Steelmaker were not timely, and that those of the Lavada were not made on their order. They further say that the rail shipments were made after they had definitely repudiated the contract. It was conceded that water shipment gave them a cheaper freight rate, and burdened the defendant in error with additional duty of putting the goods in special packages, and that the goods arrived in New York sooner by rail than by steamer; further, that they were not damaged by delay in the water shipment, because they did not dispose of what they had, and could not more readily have disposed of what they received.

One of the contentions is that the steamship was warranted to leave San Francisco September 25, 1920. She sailed on October 4th, but there was a reaffirmance of instructions to ship by that vessel after knowledge by the plaintiffs in error of the delay. As to the Lavada shipment, there was evidence that the defendant in error received instructions to ship 4 carloads by this vessel from the brokers who gave instructions to ship via the Steelmaker. This was denied by the plaintiffs in error. Considerable correspondence has been offered in evidence concerning this order, but, when the ship-

ping documents were received, objection to payment was not made upon the ground that the shipping orders were not followed, but rather upon the claim that there was a controversy as to the amount due. The authority to ship by the Lavada raised a disputed question of fact, which was submitted to the jury.

[1] The rail shipments were made in October and November, 1920. There is a defense and a contention on this appeal that there was a repudiation in October, and also on November 6th. The evidence as to this was in dispute. The issue was submitted to the jury as a question of fact in a charge to which no exception was taken. The court was most liberal in submitting this issue to the jury. It was conceded by the plaintiffs in error that on the proof this issue was a jury question. Indeed, it was submitted in language selected by the trial counsel for the plaintiffs in error, for the court charged the jury pursuant to the requests of counsel. These findings of fact against the plaintiffs in error are conclusive with us.

The defense of fraud or misrepresentations, or both, is said to be supported by the following circumstances: That the price named by the defendant in error was not reasonable; that the plaintiffs in error could not buy any prunes, unless they bought them "firm and opening prices," and that there was representation that it was only an extraordinary favor to the plaintiffs in error in selling them "Sunsweet" prunes, and in so doing they were forced to take 50 per cent. of their order in the "Interior Growers' brand"; that there were other buyers who obtained more favorable assortment of sizes of prunes; that the defendant in error had not sold for export. It is clear that the plaintiffs in error were notified of the opening prices on August 11th, and delivered the contracts, which they had been holding for a month, on August 12th. There is denial of these other allegations of misrepresentations, and the questions of fact were submitted to the jury. There is abundant testimony, adduced by the defendant in error, that its prices were made in good faith and in accordance with the understanding of the parties, and that there was no deception in the supply of the brands contracted for by the plaintiffs in error. The decision on this question of fact, resolved against the plaintiffs in error, is controlling with us.

Other questions submitted to the jury were as to the time of delivery, within the requirements of the contract for shipments, and whether or not there had been a repudiation of the contract. In the language of the plaintiffs in error's request to charge, these matters were submitted to the jury, and they found against the contentions of the plaintiffs in error. The rail deliveries were made f. o. b. Pacific Coast rail shipping point. The deliveries to vessels were made pursuant to a change contemplated by the contract, for it provided in one clause that a change in routing might be made, but subject to the seller's confirmation; the buyer assuming freight to and charges at dock and all unloading and loading charges at port. In the event of such change, the contract shall be modified and superseded by the terms and conditions contained in the form of contract of "the seller effective June 2, 1919, known as Dried Fruit Association of California water shipment contract."

[2] Under this water shipment contract, delivery was provided for f. o. b. dock at port named on reverse side, or f. o. b. interior points so named. Therefore delivery was complete when the defendant in error delivered the shipment to a carrier at an inland point, or at the latest when the defendant in error delivered the merchandise on the dock of the steamship company. Under this contract, title passed to the buyer upon the delivery by the seller to the carrier. Lipschitz v. Napa Fruit Co., 223 F. 698, 139 C. C. A. 228; Rosenberg Bros. & Co. v. Buffum Co., 234 N. Y. 338, 137 N. E. 609; Standard Casing Co., Inc., v. California Casing Co., Inc., 233 N. Y. 413, 135 N. E. 834.

The plaintiffs in error pleaded in the eleventh defense that the contract was made in New York. The rail shipments, 21 in number, were performed by delivering the merchandise to the carrier at a California shipping point. There is no question as to the quality or character of the prunes delivered, either at the boat or to the rail carrier. It is not disputed that rail deliveries were made within the time fixed by the contract, and the only question presented in defense is whether there was a repudiation of these contracts prior to delivery. The goods all arrived in New York, and upon refusal to accept them they were stored by the carriers in a licensed and bonded public warehouse in the name of "whom it may concern." They all arrived in New York in due time.

[3, 4] No objections were made to the method of delivery, but the record does disclose objection and a demand for a revision of prices. Therefore the objections on the trial as to delivery might well have been held to have been waived, except the objection that the price was too high. Lamborn v. Blattner

(C. C. A.) 6 F.(2d) 435; Luckenbach S. S. Co., Inc., v. W. R. Grace & Co., Inc. (C. C. A.) 267 F. 676. And while the trial court submitted the question of repudiation of contract to the jury as a question of fact, it nowhere appears in the record that there was an unequivocal repudiation, nor an express desire to cancel the contracts. In order to warrant a finding of repudiation of the contract, the evidence must disclose an absolute, definite, and unequivocal refusal to go on with the contract. Dingley v. Oler, 117 U. S. 490, 6 S. Ct. 850, 29 L. Ed. 984; Goldwyn Dist. Corp. v. Brenneman (C. C. A.) 13 F.(2d) 105. The charge of the trial judge was most favorable to the plaintiffs in error on this subject, and there is now no just cause for complaint.

The prunes were resold, after storage in the bonded warehouse, at private sale, and brought $86,567.48. The full contract price was $275,000. During the trial, at the request of counsel for the defendant in error, the plaintiffs in error were directed to elect as to whether or not they would accept the proceeds of the resale as a reduction of the debt. Upon their failure so to do, the court instructed the jury that, if the defendant in error recovered, they were entitled to recover the full purchase price. The verdict of the jury was for $351,071.33. This judgment was for the full purchase price, plus interest and costs.

[5, 6] The plaintiffs in error argue that it was incumbent upon the defendant in error to use all reasonable means to make a timely resale and obtain the best price for the rejected prunes, and that the burden was upon it to show that it had done so. This rule has application to a breach of contract, where title has not passed and the goods have not been accepted. Small Company v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Gilbert Grocery Co. v. Howell (C. C. A.) 289 F. 474. Where title has passed, and there is a breach of failure to pay, the measure of damages is the purchase price of the goods. This is the rule in the state of New York, where the plaintiffs in error concede the contract was made. D'Aprile v. Turner-Looker Co., 239 N. Y. 427, 147 N. E. 15, 38 A. L. R. 1426; Turner-Looker Co. v. Aprile, 234 N. Y. 517, 138 N. E. 429. The unpaid seller, under the New York law, has a right of action for the purchase price by virtue of section 144 of the New York Personal Property Law (Consol. Laws, c. 41, amended by Laws 1925, c. 560), and he also has a lien on the goods, or right to retain them for the price, while he is in possession of them, and

16 F.(2d)—13

this accords to him the right to resell them.
[7] In the event of resale of the merchandise, as took place here, the buyer should be credited with the proceeds in reduction of the debt. The plaintiffs in error did not press the credit, and refused to make an election when directed so to do by the court. Counsel representing them apparently thought that there would be a waiver of their defense of failure to sell within a reasonable time by so electing. The resale having taken place, and its amount having been proved, it was not required of counsel to make an election; but it was the duty of the court to reduce the amount of the debt, by deducting this sum from the purchase price, and so instruct the jury, for their consideration, in determining the amount of damages to be awarded. Under the New York law, the lien of the defendant in error survives the passing of the title, and they were entitled to enforce the lien by sale of the prunes. D'Aprile v. Turner-Looker Co., supra.

[8-10] But the defendant in error was obliged to wait a reasonable time before so doing, and to at least wait until it became clear that the buyer would not take and pay for them. Section 141 of the Personal Property Law. The pledge of the goods which the defendant in error asserted in reselling the property entitled it to sell and obtain the best possible price, and reduce the debt accordingly. A challenge to the good faith or fair dealing in such resale is not a subject that may be litigated in this kind of action, brought for goods sold and delivered, except by counterclaim. The party who asserts that damage occurred to him by reason of an unfair and improper sale, has the burden of proving it; and such action he may maintain in a separate suit or by counterclaim. Lillard v. Kentucky Distilleries & Warehouse Co. (C. C. A.) 134 F. 168; D'Aprile v. Turner-Looker Co., 239 N. Y. 427, 147 N. E. 15, 38 A. L. R. 1426.

[11] The New York statute confers a right to resale, not a duty to resell. If the goods were sold within a reasonable time, the right so to do to enforce the lien of the seller resided with the defendant in error. This is not a suit upon an executory contract, but upon an executed contract. In the case of an executed contract, the seller is under no necessity of proving market value. His damages are fixed by the contract, and the sale price prevails. He sells as if he held the goods as collateral security. Williston on Sales (Ed. 1909) pp. 931, 932.

California has a statute similar to the New York statute. Civ. Code Cal. § 3310,

in substance, provides that, where title has passed and is vested in the buyer, for breach of the buyer's agreement to accept and pay for the personal property, the measure of damages is the contract price. Hind v. Oriental Products Co., Inc., 195 Cal. 655, 235 P. 438. Whether the contract be one executed in California or New York, the result is the same. Southern Pacific Co. v. De Valle Da Costa (C. C. A.) 190 F. 689. The trial court left to the jury the question of whether the sale was within a reasonable time, and by their verdict they have determined that four months, under all the circumstances, was not an unreasonable time to wait. At the trial, and again after the rendition of the verdict, counsel for the defendant in error expressed a willingness to give the plaintiffs in error credit for the amount actually received on the resale of the merchandise.

[12] The argument that error was committed in refusing to allow the plaintiffs in error to introduce evidence as to its counterclaim, showing that the defendant in error was a monopoly, is without force. There was no proof that the contracts in suit were connected with or were an inherent part of any conspiracy to restrain trade. Proof thereof was inadmissible. The argument that the contracts themselves contained any specific element of illegality, or were an inherent and integral part of a scheme to monopolize interstate commerce in prunes, is equally without force. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Milliken-Tomlinson Co. v. American Sugar Refining Co. (C. C. A.) 9 F.(2d) 809.

While it was erroneous to fail to give credit to the plaintiffs in error for the amount of the resale price of the prunes, it is unnecessary to reverse the judgment, if the defendant in error will stipulate to a modification of the judgment. The issues of fact having been resolved in favor of the defendant in error, it is entitled to a judgment for the contract price, less the resale price of $86,567.48, with interest thereon and costs. This affirmance as thus modified shall be without prejudice to the plaintiffs in error, suing for whatever rights it may have against the defendants in error for delay or bad faith in the resale of the prunes.

The judgment will be reversed, unless the stipulation be given, within 10 days, modifying the judgment, or granting credit therefor on the execution. If thus modified, in conformity with this opinion, the judgment will be affirmed.