## UNION ASSUR. SOC., LIMITED, OF LONDON, ENGLAND, v. MILLER et al.

### No. 707.

District Court, W. D. Missouri, W. D.
Aug. 21, 1928.

erty and to secure the notes Miller executed a deed of trust to Jameson wherein the defendant C. L. Flaugh was named as trustee. Subsequently Jameson sold the notes and deed of trust to one Hunter.

The insurance policies secured on the property in question by Miller contained a mortgage clause beginning "Loss, if any, payable to C. L. Flaugh, trustee, as mortgagee (or trustee) as such interest may appear," and further providing that "On payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner no liability existed, it shall to the extent of such payment, be subrogated to the mortgagees (or trustees) right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's (or trustee's) right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage."

After the fire and the partial destruction of the property thereby, the plaintiff paid the insurance fixed in the policies to Flaugh, the trustee, to the extent of the indebtedness then outstanding against the property and secured by the deed of trust above referred to, and, claiming that no liability existed as to Miller, the owner of the property took an assignment of the notes and deed of trust and asserted it was subrogated to all the rights therein of the then holder of said notes, the aforesaid Hunter.

At the time of the institution of this suit the notes in question were past due and this suit was instituted to obtain a foreclosure of the deed of trust and the sale of the property thereby covered and for other relief incidental to the asserted rights of the plaintiff as the owner of the notes and deed of trust.

On the trial the evidence showed that the building at the time of the fire was in part used by persons to whom that part had been let by the owner for the illegitimate manufacture of intoxicating liquors and that in connection with that unlawful enterprise considerable quantities of gasoline and alcohol were then upon the premises. The evidence showed, moreover, that in all probability the fire directly resulted from these unlawful activities. Furthermore the evidence showed that Miller knew or should have known to what uses the property was being put. These conclusions of fact from the testimony (and they

Hogsett, Murray, Trippe, Depping & Houts, of Kansas City, Mo., for plaintiff.

E. M. Harber, of Trenton, Mo., and C. W. Crossan and J. C. Stanton, both of Kansas City, Mo., for defendants.

OTIS, District Judge.

On or about October 1, 1925, a building belonging to the defendant Edwin L. Miller and located in Kansas City, Missouri, was partially destroyed by fire. Prior thereto the plaintiff had issued two policies of fire insurance on the building, one for $2,000 and one for $8,000. The loss from fire exceeded the amounts called for in the policies. The property had been acquired by Miller December 28, 1920, by purchase from one David Jameson, a citizen of Pennsylvania. In connection with the transaction he had given Jameson three notes for a total of $10,000. Contemporaneously with the purchase of the prop-

are here stated as conclusions and findings of fact) were not undisputed, but the court is convinced and was at the time of the trial convinced from the testimony in the case that they were facts.

It is the contention of the plaintiff that these facts, under the contracts of insurance, relieve it from liability to Miller and entitle it now under the terms of the contracts to prevail in this suit. A number of legal questions are presented by the pleadings and briefs of counsel.

1. It is urged by the defendants that this court does not have jurisdiction of this case on the ground that it would not have had jurisdiction of a case brought by the assignor to the plaintiff of the notes by which the deed of trust, the foreclosure of which is here sought, were secured. As we have seen, the notes were executed originally by the defendant Miller and made payable to Jameson and by him assigned to Hunter. The plaintiff has them by assignment from Hunter. Hunter is a resident of Alaska.

As a resident of one of the territories of the United States, there is not such diversity of citizenship between Hunter and the defendants that he could maintain an action in the United States court unless there was some other ground of its jurisdiction than that of diversity of citizenship. Thebo v. Choctaw Tribe of Indians, 8 Cir., 66 F. 372.

But this inability under which Hunter would suffer, were he to attempt to foreclose the deed of trust, does not attach to the plaintiff.

Section 24(1) of the Judicial Code, as amended, 28 U.S.C.A. § 41(1), provides that "No district court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

Jameson, who was the original payee of the notes here, and who was a resident of Pennsylvania, of course, might have prosecuted the case in this court under this statute. The plaintiff, which is a nonresident, is of diverse citizenship with the defendants. The fact that an intermediate assignor of the notes might not have prosecuted a suit thereon in this court does not under the statute or the decisions deprive the court of jurisdiction. Lipschitz v. Napa Fruit Co., 2 Cir., 223 F. 698.

2. As a second objection to the jurisdiction of this court it is urged by the defendants that Flaugh, the trustee, now named as a defendant, is a necessary party plaintiff, and that if he were named as a party plaintiff, the court would have no jurisdiction since he is a resident of the same state with the defendant Miller. But is Flaugh, the trustee, a necessary party plaintiff?

The amended bill in equity alleges in this connection "That the defendant, C. L. Flaugh, trustee, is the trustee named in the said deed of trust and although plaintiff has duly requested him to institute this action and perform his obligations under the provisions of said deed of trust, the said trustee has refused to do so. That said refusal of said C. L. Flaugh, trustee, to bring an action to foreclose was because of his friendliness to defendant, Edwin L. Miller, and his opposition to said foreclosure by plaintiff and because he believed he had no legal right to institute and prosecute said foreclosure action as trustee under the circumstances existing at said time; that he believed he did have the power to sell said property under the power of sale in said deed of trust; that said reasons and matters have continued from the time of said refusal until the present and because of said attitude of said trustee and said matters and circumstances, injury and damage to plaintiff may occur unless said trustee is enjoined from any action under said deed of trust or otherwise concerning said property."

The allegations thus made in the bill the evidence tended to establish.

Under such circumstances the trustee might properly be made a defendant in the case and certainly is not a necessary party plaintiff. This conclusion is well sustained by the authorities. Merrill et al. v. Atwood et al., D.C., 297 F. 630. The case of Hamer v. New York Railways Company, 244 U.S. 266, 37 S.Ct. 511, 61 L.Ed. 1125, cited by the defendants, does not support a contrary conclusion in a situation such as is present here where the bill of complaint alleges and the proof shows such reasons for the refusal of the trustee to sue.

3. Aside from the attack made by the defendants upon the jurisdiction of this court, it is also contended by them that there is no jurisdiction here in equity. The argument is that the plaintiff would have a complete legal remedy by way of defense in an action brought upon the policies by the insured. It is further argued that by proceedings at law to foreclose the deed of trust all the relief sought might be attained.

As to the first of these contentions, it is obvious that it does not point out an adequate legal remedy to the plaintiff. The remedy is not adequate because it is dependent upon the action of another than the plaintiff, and that other a hostile party. The course now taken by the plaintiff affords it a present remedy. The course suggested might defer opportunity to assert its right for a long period. This consideration alone destroys the force of the first contention.

As to the contention that the plaintiff might have an adequate remedy by proceedings at law to foreclose its deed of trust, that too is not good. To defeat equity jurisdiction, there must be an adequate legal remedy in the courts of the United States, but in these courts, foreclosure proceedings are equitable, not legal. Idaho & Oregon Land Improvement Co. v. Bradbury, 132 U.S. 509, 513, 10 S.Ct. 177, 33 L.Ed. 433.

4. Having now determined that this court has jurisdiction of the case, and that it is rightfully brought in equity, there is next to be considered whether the plaintiff is liable on its policies of insurance to the defendant Miller, since its right to recover in the present proceeding depends upon the allegation contained in its bill that it is under no liability to him.

The policy contained the following provision: "Permission granted for such use of the premises as is usual and incidental in the business as conducted therein of above, and when not in violation of any law, statute or municipal restriction, to keep and use all articles and materials usual and incidental to said business in such quantities as the exigencies of the business require."

It also provided that "This entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, shall be void, * * * if the hazard be increased by any means within the control or knowledge of the assured."

And it further provided that "This entire policy, unless provided by agreement endorsed thereon, or added hereto, shall be void * * * if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises benzine, benzol, dynamite, ether, fireworks, gasoline, Greek fire, gun powder exceeding 25 pounds in quantity, naptha, nitroglycerine or other explosives, phosphorus, petroleum, or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights and kept for sale according to law but in quantities not exceeding 5 barrels, provided it be drawn and lamps filled by daylight or at a distance of not less than ten feet from artificial light)."

The question is whether under these provisions the plaintiff is liable to the insured in view of the conclusions of fact above set out to the effect that the unlawful manufacture of liquor was conducted on the premises with the knowledge of the defendant, and that gasoline and alcohol were kept there in connection with that unlawful business, and that thereby the hazard was increased.

This question must be resolved in plaintiff's favor. Indeed, it seems a question which is scarcely debatable. However liberally contracts of insurance should be construed in favor of the insured and against enforcing forfeitures, that liberality could scarcely go so far, where such forfeiture clauses as those present here exist, as to hold the insurer liable where, with the knowledge of the insured, a wholesale distilling business was criminally carried on upon the premises and alcohol (which, to say the least, is a substance highly inflammable) manufactured in large quantities by means of gasoline burned under pressure and kept on the premises in quantities, and where by reason of these things the likelihood of fire was greatly increased, and where, as here, the destroying fire apparently was directly caused by the unlawful operations.

But although the question does not seem debatable, perhaps certain contentions made by the defendants should be noted.

It is contended that gasoline is not prohibited on the premises under the contract unless in excess of five barrels. The basis of this contention is the language above quoted to the effect that the policy

shall be void if "petroleum or any of its products of greater inflammability than kerosene oil of United States standard (which last may be used for lights and kept for sale according to law but in quantities not exceeding five barrels ` * * * )`". It is said that gasoline is one of the products of petroleum. It is argued that five barrels of petroleum might be kept on the premises.

The argument is not sound for two reasons: the first is that while gasoline is a product of petroleum, its specific prohibition defeats the construction contended for that it is also included under the general heading "products of petroleum." The second and more persuasive reason is that the provision properly construed only authorizes on the premises five barrels of "*kerosene,*" not five barrels of "petroleum or any of its products."

■ It is contended that by reason of a rider which is attached to the contract the provisions under which the insurer would not be liable are nullified and are therefore inapplicable in this case. That rider, spoken of in the brief as the "work and materials clause," is in the following language: "Permission granted for such use of the premises as is usual and incidental in the business as conducted therein of *(state kind of business)* and when not in violation of any law, statute or municipal restrictions to keep and use all articles and materials usual and incidental to said business, in such quantities as the exigencies of the business require."

The contention is that by that rider the insurer was authorized to keep any article incidental to *any* business conducted on the premises, whether that business was lawful or unlawful, unless some law forbad the keeping or storing of such article.

The contention is unsound. In the first place, it is unsound because it does not follow that the omission in the blank provided of the name of business permitted, is the equivalent of the insertion in that blank of the words "any business" or of the words "the business of distilling intoxicating liquor." Rather the omission of the kind of business nullifies the permission granted. The permission granted is for the use of the premises incidental in the business of ———— which is no permission at all.

■ In the second place, the contention is unsound because it places on the words "not in violation of any law" an unwarrantedly narrow construction. Gasoline used in connection with the manufacture of alcohol and alcohol unlawfully manufactured are both kept on *any* premises *in violation of law,* and are subject to confiscation. The words "in violation of *any* law" certainly include the laws of the United States. They are all inclusive terms. They cannot be restricted to merely include such municipal regulations as govern the storage of inflammable and explosive materials.

The plaintiff is not liable under its contracts to the insured.

■ 5. There is a final contention made by the defendants which still must be considered. That contention is that the "long mortgage clause" contained in the policies here, and upon which the plaintiff relies, since it is by virtue of that that it claims to be entitled to the subrogation, is invalid as not having been a part of the form of policy filed with the Superintendent of Insurance by the plaintiff.

Section 6239 of the Revised Statutes of Missouri, 1919, Mo.St.Ann. § 5829, p. 4459, provides that "Each fire insurance company doing business in the state of Missouri is hereby required * * * to file the form of policy for use by it in the state of Missouri * * * [but] no policy shall be issued in this state carrying risks by fire or lightning by any company which does not embrace the form filed and approved of, as herein provided."

The "long mortgage clause" upon which the plaintiff relies was not a part of the form filed with the Superintendent of Insurance. That form contained what is spoken of as the "short mortgage clause." The language of the so-called "short mortgage clause" is a part of the language of the "long mortgage clause," and the latter is in no sense inconsistent with or nugatory of the former. The policy filed with the Superintendent of Insurance, therefore, is "embraced" in the form of policy involved in this case, hence there is no justification for the contention that the "long mortgage clause" is invalid under this statute. No case has been cited holding that under the Missouri statute such "long mortgage clause" is not binding between the parties, and the proof shows that the insurance department of the state has never construed the statute as defendants now contend it should be construed. On the other hand, the department has con-

strued it as not invalidating the long mortgage clause. That construction is to be given weight, and especially when it is apparently so consistent with the plain terms of the statute. It must be held that this contention of the defendant is not tenable.

Other points discussed in the briefs of counsel have been duly considered but they do not affect the result.

The plaintiff is entitled to the relief asked in its bill of complaint, and a formal decree granting that relief may be prepared by counsel and submitted to the court for approval.