ANTONIO D'APRILE, Respondent, *v.* THE TURNER-LOOKER COMPANY, Appellant.

Sale — seller has lien for price which survives until payment — action for price not inconsistent with enforcement of lien — resale of goods pending action for price — when buyer may not maintain action against seller for conversion — buyer entitled to credit for proceeds of resale — contingency of surplus and profit does not change basis of power to resell — right of buyer to rescind and resume title separate and alternative to right to resell — buyer may have damages for any abuse of power to resell.

1. Though property in goods sold may have passed to the buyer, the unpaid seller has a lien for the price (Pers. Prop. Law, § 135) which he may enforce by resale if default in payment has continued an

# 428     D'APRILE v. TURNER-LOOKER CO.

unreasonable time (§ 141). This power survives till payment of the price is made and an action for the price is not inconsistent with a later enforcement of the lien.

2. Where during the pendency of an action for goods sold, resisted on the ground that title had not passed, the seller resells and delivers the goods to a new buyer, but offers to consent to an amendment of the answer by which the first buyer would have been given a credit for the proceeds, which .offer is refused and thereafter the seller has judgment for the sum claimed without deduction, the buyer may not maintain an action against the seller for the conversion of the goods resold. Though he should be credited with the proceeds of the resale in reduction of the debt, if, by silence or inaction, he has thrown the credit away, he has not thus transformed a rightful act into a tort. The resale was rightful in the making. It did not become tortious by relation when the debt was turned into a judgment.

3. The fact that upon a resale the surplus, if any, may be retained by the seller as his own (Pers. Prop. Law, § 141) does not serve to make the enforcement of the lien a resumption of. the title or a rescission of the sale. The seller does not act as owner, but by virtue of a power, and like an agent or fiduciary, he must act prudently and fairly. The contingency of a surplus and a profit does not change the basis of the power and transmute into a plenary title what was a lien in its inception.

4. Nor does the fact that the unpaid seller may, under section 142, rescind the sale and reclaim the title for himself form any basis for a holding that an unpaid seller who resells under section 141 for the enforcement of his lien resumes title to himself to the same extent as if he had acted under section 142 and had given notice of rescission. The remedies are not one. They are several and alternative.

5. Though complications may arise if a resale is unfairly or improvidently conducted after action begun or judgment rendered for the price, the same difficulties are possible where there is an unfair or irregular disposition of property held in pledge. The buyer or the pledgor may have his action for damages for any abuse of power by seller or pledgee.

D'Aprile v. Turner-Looker Co., 209 App. Div. 223, reversed.

(Argued December 1, 1924; decided February 25, 1925.)

APPEAL from a judgment, entered June 19, 1924, upon. an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the

complaint by the court at a Trial Term without a jury and directing judgment in favor of plaintiff.

*Robert Averill* for appellant. The opinion of the Appellate Division holding there was an actionable conversion of the whisky in suit is based upon an erroneous assumption of both law and fact, unsupported by the cases cited, and is violative of an elementary rule of the law of sales, as laid down in this court and the Sales of Goods Act. (*Stokes* v. *Mackay,* 147 N. Y. 223; Pers. Prop. Law, § 147; *Austin, Nichols & Co.* v. *Heermance Storage, etc.,* 199 App. Div. 626; *Smith* v. *Savin,* 141 N. Y. 315; *Muller* v. *Quinlan,* 195 N. Y. 109; *Kavanaugh* v. *McIntyre,* 210 N. Y. 175; *Griggs* v. *Day,* 136 N. Y. 152; *Wilson* v. *Little,* 2 N. Y. 443.)

*Charles D. Newton* and *Edward P. Ward* for respondent. A party to a contract who has deliberately put it out of his power to perform breaches the contract, and the other party is thereby relieved from performance or tender of performance, and may bring immediate suit. (*Bogardus* v. *N. Y. Life Ins. Co.,* 101 N. Y. 328; *MacDonnell* v. *B. L. T. & S. D. Co.,* 193 N. Y. 101; *Smith* v. *Savin,* 69 Hun, 311; 141 N. Y. 315; *Wilson* v. *Little,* 2 N. Y. 443; *Kilpatrick* v. *Dean,* 19 N. Y. S. R. 837; *Griggs* v. *Day,* 136 N. Y. 152; *Saltus* v. *Everett,* 20 Wend. 267; *L. I. Brewery Co.* v. *Fitzpatrick,* 18 Hun, 389; *Gorham* v. *Jackson,* 188 App. Div. 999; 232 N. Y. 579; *Johanns* v. *Ficke,* 224 N. Y. 513.) The Sales of Goods Act fully and explicitly authorizes the action under review. (Pers. Prop. Law, § 147.) The judgment appealed from is fully supported by the findings and the facts. (*Hackett* v. *Belden,* 47 N. Y. 624; *Kenney* v. *Apgar,* 93 N. Y. 539; Baylies on New Trials & Appeals [3d ed.], 11, 12; *People ex rel. Oswald* v. *Goff,* 52 N. Y. 434; *Lavallette* v. *Wendt,* 75 N. Y. 597; *Leonard* v. *Columbia Steam Navigation Co.,* 84 N. Y. 48; *Matter of Edson,* 38 App. Div. 19; 159 N. Y. 568.)

CARDOZO, J.   The action is in tort for the conversion of the plaintiff's property.

A sale of ten barrels of whisky was made by the defendant to the plaintiff in May, 1918.   The seller brought action for the price, and the buyer resisted on the ground that title had not passed.   The courts held to the contrary (*Turner-Looker Co.* v. *Aprile,* 234 N. Y. 517), and judgment for the price was entered.   In the meantime, however, the whisky had been sold.   The bonded warehouse receipts, retained by the seller when the action was begun, were delivered to a new buyer while the case was in the courts.   This fact came out upon the trial, and the seller consented to an amendment of the answer by which the first buyer would have been given a credit for the proceeds.   The buyer refused to take advantage of the offer, very likely in the belief that the acceptance of the credit would shatter his defense.   This, indeed, would have been its effect, for the price upon resale was only a small fraction of the price under the contract.   At all events, the seller had judgment for the sum claimed without deduction.   No part of that judgment has ever been collected.

The buyer, worsted in the action for the recovery of the price, has retaliated with this action for the conversion of the subject of the sale.   He was unsuccessful at the Trial Term, but the Appellate Division reversed and gave judgment in his favor.   The theory of the judgment is that an action for the price is inconsistent with a resale for the enforcement of a lien.   The choice of the one remedy was held to bar the seller thereafter from the adoption of the other.   We read the statute otherwise.   Though the property in the goods may have passed to the buyer, the unpaid seller has a lien for the price (Pers. Prop. Law [Cons. Laws, ch. 41], § 135), which he may enforce by resale if default in payment has continued an unreasonable time (§ 141; *Van Brocklen* v. *Smeallie,* 140 N. Y. 70, 76).   The right though denominated

1925.]          Opinion, per CARDOZO, J.          [239 N. Y. 427]

a lien, is in truth greater than a lien (*Tuthill* v. *Skidmore*, 124 N. Y. 148, 153; *Dunstan* v. *McAndrew*, 44 N. Y. 72; *Van Brocklen* v. *Smeallie, supra;* Williston, Sales, § 545.) The lienor's position " is very nearly that of a pledgee, with power to sell at private sale in case of default " (*Tuthill* v. *Skidmore, supra,* at p. 143). This power survives till payment of the price is made (*Wibansky* v. *Krutinsky,* 86 Conn. 22, 30; *Dunstan* v. *McAndrew, supra*). An action for the price is no more inconsistent with a later enforcement of the lien than it is with the foreclosure of a mortgage or the sale by a pledgee of securities held in pledge (*Mason* v. *Decker,* 72 N. Y. 595, 599; Jones on Collateral Securities & Pledges, § 590). True, the buyer should be credited with the proceeds in reduction of the debt. As we have seen, he did not press the credit when he had an opportunity to receive it. We have little doubt that upon proper application, he may get it even now by allowance upon the execution in reduction of the judgment. Such considerations, however, are not decisive of the controversy before us. If the buyer by silence or inaction has thrown the credit away, he has not thus transformed a rightful act into a tort. The seller in disposing of these certificates was in the exercise of a lawful power. It was turning its collateral into money while suing for its debt. Blunders of procedure there may subsequently have been in respect of the time and manner of giving credit for the proceeds. The sale was rightful in the making. It did not become tortious by relation when the debt was turned into a judgment.

We are told that a resale is inconsistent with an action for the price because the surplus, if any, may be retained by the seller as his own (Pers. Prop. Law, § 141). Exemption from the duty to account for the excess is a curious anomaly in the statutory scheme (cf. Williston, Sales, § 553). We think it does not serve to make the enforcement of the lien a resumption of the title or a rescission

of the sale. The seller does not act as owner, but by virtue of a power, and like an agent or fiduciary, he must act prudently and fairly. In most instances, as here, the resale, when made, results in a deficiency (Williston, Sales, § 553), which is charged against the buyer. The exceptional contingency of a surplus and a profit does not change the basis of the power, and transmute into a plenary title what was a lien in its inception. If the unpaid seller is willing to resume the ownership, the law defines his remedy. By section 142 he is at liberty to rescind the sale and reclaim the title for himself. " An unpaid seller having a right of lien or having stopped the goods in transitu, may rescind the transfer of title and resume the property in the goods, where he expressly reserved the right to do so in case the buyer should make default, or where the buyer had been in default in the payment of the price an unreasonable time " (§ 142). When a sale is thus rescinded, the seller who resells thereafter, is acting for his own account. He may sacrifice the goods or waste them, for what he does, he does as owner, and not as lienor. We see no basis for a holding that an unpaid seller who resells under section 141 for the enforcement of his lien resumes title in himself to the same extent as if he had acted under section 142 and had given notice of rescission. · The remedies are not one. They are several and alternative.

We are told, however, that the resale as made was not under the lien at all, but under an assumed, though unreal, authority to dispose of the certificates at pleasure and thereafter substitute equivalents. What the seller might have done as lienor is said to be more or less irrelevant. What it did, in the plaintiff's view, was not as a lienor, in subordination to the plaintiff's title, but in repudiation of that title, and hence as a wrongdoer. The record does not sustain this interpretation of its conduct. Neither word nor overt act evinces a

repudiation of a duty to make allowance to the buyer for whatever was collected. On the contrary, a letter written by the buyer's counsel almost on the eve of the resale has in it a strong suggestion that the object of the transaction to the understanding of both parties was to liquidate the loss. Against this, there is nothing but the fact that the defendant, charged with a conversion of particular certificates, has stated in its answer that it is willing even now to give the plaintiff others. There was no duty to make the offer. It has neither helped nor hindered. The uncalled-for concession did not change by retroaction the quality of the act. Finally, if inferences are possible that there was repudiation by the seller of the title of the buyer, they are at most inferences of fact. The Appellate Division has made no attempt to draw them. It has placed its ruling upon the ground that there was no power to resell.

We are reminded of complications that may arise if a resale is unfairly or improvidently conducted after action begun or judgment rendered for the price. The same difficulties are possible where there is an unfair or irregular disposition of property held in pledge. The buyer or the pledgor may have his action for damages for any abuse of power by seller or pledgee.

In this case the judgment for the price was for $1,799.45. The proceeds of the resale were only $418.81. The buyer, treating the resale as a conversion, has recovered damages on the basis of market values as they stood more than a year thereafter when notice of the conversion reached him. On that basis, the credit due him was $1,846.36. By the application of that credit, the judgment against him has been wiped out, and a balance left in his favor. He may not pay his debt so easily.

The judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in the Appellate Division and in this court.

LEHMAN, J. (dissenting).   The defendant sold personal property to the plaintiff.   Title to the goods passed to the buyer.   Under section 135 of the Personal Property Law, the seller had a right, denominated a lien, to retain possession of the goods until payment or tender of the price.   It exercised this right, and while still in possession of the goods it brought an action for the price.   By bringing this action, the seller did not lose its lien, for even a judgment for the price would not have this effect. (Personal Property Law, section 137.)   The seller's lien or right of possession carries with it a right to resell the goods (Personal Property Law, section 141), and a right to rescind the sale (Personal Property Law, section 142).   Even before the Sales Act was enacted, an unpaid seller under such circumstances had the same remedies. He might sue for the entire price, or he might sell the property and recover the difference between the contract price and the price obtained on such resale, or he might keep the property as his own and recover the difference between the market price at the time and place of delivery, and the contract price.   (*Dunstan* v. *McAndrew*, 44 N. Y. 72; *Mason* v. *Decker*, 72 N. Y. 595.)   During the pendency of the action for the price, the defendant proceeded to exercise its right to resell.   Whatever may have been the rule in this state prior to the Sales Act (*Westfall* v. *Peacock*, 63 Barb. 209), I agree with the views expressed in the prevailing opinion that under the Sales Act the bringing of the action for the price did not constitute a choice of one remedy which would bar the seller from the subsequent adoption of the other remedy afforded by the statute, through enforcement of his lien by resale, for both remedies are based upon the theory that title to the property had become vested in the buyer.   (*Mason* v. *Decker, supra.*)   After that sale, however, the seller was no longer entitled to recover the price of the goods, but might " recover from the buyer damages for any loss occasioned by the resale."   (Personal Property Law, section

141.) In spite of the resale during the pendency of the action for the price, the seller has recovered judgment for the full price. In the case of *Urbansky* v. *Kutinsky* (86 Conn. 22), and other cases that might be cited, the buyer recovered only the balance of the purchase price after crediting the amount received upon the resale. He was entitled under the statute to that. Here the seller has recovered judgment for the full price. It was not entitled under the statute to such judgment after a resale, but only to damages for any loss. Conceding, as I do, that at the time the defendant resold the goods, it still had the right to make such sale by virtue of its lien, it seems to me that the subsequent judgment for the price precludes the defendant from urging that it resold the goods in the exercise of that right; for such a resale would, I think, be inconsistent with a judgment for the price obtained thereafter. The question is not whether the seller had the right under its lien to resell after the bringing of the action for the price, but whether it did sell as lienor. If the judgment for the price is based upon implied findings which are inconsistent with an assertion of previous sale as lienor, that judgment does not render unlawful a sale which was previously lawful; it merely conclusively adjudicates that there was no lawful sale.

I recognize that at the time of the trial of the action for the price, the seller consented to an amendment of the answer by which the first buyer would have been permitted to plead the amount received upon the resale as an offset, but as the prevailing opinion has pointed out, that would have shattered his defense, and I think it would also have constituted an admission that the resale was lawful and properly conducted. The seller may not compel the buyer to plead the resale as an offset or partial defense, if after such resale the seller is entitled to recover a judgment, not for the price, but only for damages. The decisive consideration in this case, in my

opinion, is whether the judgment for the price establishes conclusively not only that title to the goods passed to the buyer, but that such title was still in the buyer at the time of the judgment. The answer to this question depends upon the nature of the seller's right of action for the price, as well as upon the nature of his right to resell.

The price is the consideration paid for a transfer of title, and under the Sales Act only under exceptional circumstances may there be a recovery of the price without transfer of title. A judgment for the price constitutes an adjudication not merely that title had passed to the buyer, but that the seller had not rescinded such transfer of title. If the resale results in a rescission of the original transfer of title and a resumption of title in the seller, then it can hardly be doubted that an action for the price, which constitutes the consideration for the transfer of title to the buyer, will not lie thereafter. It is urged that a resale made under section 141 of the statute should not be confused with a rescission of the transfer of title as provided in section 142. I find no essential difference in the nature of the rights accorded by these two sections. The rights accorded under both sections arise under the same circumstances, viz., " where the buyer has been in default in the payment of the price an unreasonable time." The result is the same: " The seller shall not thereafter be liable to the buyer upon the contract to sell or the sale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale." True, section 141 contains additional provisions which could be applicable only to a resale, viz., that the seller shall not be liable to the original buyer " for any profit made by such resale," and that the " seller is bound to exercise reasonable care and judgment in making a resale, and subject to this requirement may make a resale either by public or private sale." The meaning of these additional pro-

visions is hardly open to doubt. By virtue of them the seller may on the one hand retain any profit made by a resale, and on the other hand may fix the amount of any loss through a resale, fairly and judiciously made. I find nothing in these provisions which is logically inconsistent with the view that the exercise of the seller's right to resell provided by section 141 is founded upon a total rescission of the transfer of title. That section merely provides an additional right to fix the amount of loss suffered by the seller. The right of a buyer, with title to the property, to have the profit made upon a resale seems clear " unless the seller has the right totally to rescind the sale, revest himself with the ownership of the goods, resell them as his own, and take the proceeds for his own account. That the seller has this alternative right will be seen from the following sections, but here it may be said that on whatever reasoning the doctrine is based, the law seems to recognize the seller's right to keep any profit from the resale. This is expressly so provided in the Sales Act." (Williston on Sales [2d ed.], section 553.)

Discussion of the classification into which the right of an unpaid seller to resell logically should be placed, or the philosophical basis of that right, if such basis there be, may not assist materially in the determination of the concrete question before us. We are concerned with the substance of the rights given by the statute. It is said that under section 142 a seller who rescinds the sale may resell thereafter for his own account, while the seller who proceeds under section 141 " does not act as owner, but by virtue of a power, and like an agent or fiduciary, he must act prudently and fairly." If such an obligation rests upon the seller he should be accountable, as other agents or fiduciaries are, for failure to carry out his obligation. Even though the conceded anomaly that the " fiduciary " need not account to the owner for any profits made be regarded as without decisive significance,

the fact that even where the seller does not act prudently and fairly in making the resale he is not guilty of conversion, nor at least before judgment for the price, accountable for any loss suffered by his misconduct, should not be overlooked. The resale, if not fairly made, becomes a rescission under section 142 of the act, and the only effect of the seller's misconduct is that the price realized no longer serves to fix the loss, as would be the case under a resale made in accordance with section 141. In both cases the seller retains the profits, in both cases he may still hold the buyer for damages for his loss, and nothing else, and if he obtains a judgment for the price after he has disposed of the goods he has obtained more than he is entitled to.

While this court has in many early cases referred to resales made by an unpaid seller as if made by him as an agent of the buyer, in the case of *Moore* v. *Potter* (155 N. Y. 481, 487) it has noted the inaccuracy of such language. " The use of the words ' as agent of the vendee ' was not intended as a determination that the relation between the parties was that which ordinarily exists between a principal who owns property and an agent who may be authorized to manage or sell it. But it is a general expression which has been somewhat inaccurately used to define the right of a vendor to make a resale and hold the vendee responsible for his loss. It is quite manifest that a resale made under such circumstances is not made by the vendor strictly as agent of the vendee, but he acts for himself in disposing of the property for the purpose of ascertaining the actual damages he may sustain." (See, also, *Ackerman* v. *Rubens*, 167 N. Y. 405.) In considering the earlier decisions in the light of these cases we may also properly give some weight to the fact that at the time they were written the right of the seller to retain any profit upon a resale was not clearly established; in fact the contrary

rule was sometimes assumed.    (See *Westfall* v. *Peacock, supra.*)

If we hold that a seller may after resale still obtain a judgment for the price, subject to an offset for the price realized, we place the buyer in an unfortunate position. He may not even know that the resale has been made, and it seems unreasonable to hold that the buyer's remedy is by an offset which he may not know exists.    It may be urged that even in such case the plaintiff could obtain a satisfaction of judgment upon proof that the seller had realized upon the security and upon payment of the difference between the judgment and the amount realized, but it is somewhat anomalous to hold that a judgment may be reduced by proof of facts which might have constituted an offset at the trial.    If we place our decision upon the narrow ground that in this case the buyer was informed of the resale, and he refused an offer to permit him to plead an offset, our difficulties seem no less.    He could plead an offset only by admitting the fairness of the sale, yet he may desire to litigate that very question. The statute gives the seller the right to recover only for his loss, and not for the price.    He must establish his loss by proof of a resale made with reasonable care and judgment.    It can hardly be incumbent upon the buyer to plead as an offset the amount obtained by the seller upon a resale, for such a plea would preclude him from litigating the propriety of the resale.

If the result in this case is that the buyer pays less than the seller could have compelled him to pay if he had proceeded properly, the result is due to the attitude of the seller.    It has chosen to resell the buyer's property and yet to hold the buyer for the price, instead of the loss occasioned to it by the buyer's breach.    It has not attempted to account to the buyer for the proceeds of the property.    It still offers as a defense to the action for conversion, to deliver to the plaintiff goods similar to the goods which belonged to the buyer.    It claims the

[239 N. Y. 440]       Statement of case.        [Feb.,

benefit of the resale but it does not assume its burden. It has itself caused any loss which it may have suffered.

The judgment should be affirmed, with costs.

Pound, McLaughlin and Andrews, JJ., concur with Cardozo, J.; Lehman, J., reads dissenting opinion in which Crane, J., concurs; Hiscock, Ch. J., absent.

Judgment reversed, etc.