Jacob A. Jacobs, Appellant, *v.* Nathan E. Newman, Respondent.

(Argued June 12, 1930; decided July 8, 1930.)

*Alexander Rose* for appellant. The defendant received exactly what he contracted for inasmuch as within the six-year period plaintiff tendered to him one-half of the stock in question. (*Markham* v. *Jaudon*, 41 N. Y. 235; *Brown* v. *Bronson*, 87 N. Y. Supp. 872; *Smith* v. *Becker*, 192 Mo. App. 597; *Wilfand* v. *Zwerner*, 168 N. Y. Supp. 564; *Vogelstein* v. *Pope Metals Co.*, 155 N. Y. Supp. 128; *Bullard* v. *Eames*, 219 Mass. 49.) The Jacobs-Kelsey contract was not merged in the judgment as far as defendant was concerned. (*Spratt* v. *Reid*, 3 Green [Iowa], 489; *Gould* v. *Svendssgaard*, 141 Minn. 437; *Murphy* v. *Manning*, 134 Mass. 488; *Owens* v. *Bowie*, 2 Md. 457.)

*Allan Deutsch, Samuel Hart* and *Chauncey E. Treadwell* for respondent. Plaintiff's default in the performance of the Kelsey contract and his conduct subsequent thereto clearly evidenced an abandonment and repudiation of the said contract, and an intention not to perform same. This constituted an anticipatory breach of the Newman contract, relieving defendant of all liability thereunder. (*Jungman & Co.* v. *Atterbury Bros., Inc.*, 249 N. Y. 119; Williston on Contracts, § 675; *Portuguese-American Bank* v. *Weller*, 242 U. S. 7; *Wood* v. *Fisk*, 156 App. Div. 497; *Giarrantano* v. *McIlwain*, 215 App. Div.

644; *James* v. *Burchell*, 82 N. Y. 108; *Stern* v. *Mayer*, 166 Minn. 346; *Matter of Pettingill*, 137 Fed. Rep. 143; *Moffat* v. *Davitt*, 200 Mass. 452; *New Iberia Sugar Co.* v. *Lagarde*, 130 La. 387; *Fort Payne* v. *Webster*, 163 Mass. 134; *Meyers* v. *Markham*, 90 Minn. 230; *Gruen* v. *Ohl*, 81 N. J. L. 626; *Brodhead* v. *Reinbold*, 200 Penn. St. 618; *Gray* v. *Smith*, 83 Fed. Rep. 824.) The judgment merged the Kelsey contract. After judgment, the Kelsey contract could have no independent vitality. Payments made by plaintiff were on the judgment and not on the contract. (2 Black on Judgments [2d ed.], § 677; 2 Freeman on Judgments [5th ed.], § 546; *Gutta Percha & R. Mfg. Co.* v. *Mayor*, 108 N. Y. 276; *Lowell* v. *Lane*, 33 Barb. 292; *Knight* v. *Rothschild*, 132 App. Div. 274; *Lucas* v. *East Stroudsburg Glass Co.*, 38 Hun, 581; *Silver* v. *Krellman*, 89 App. Div. 363; *Rosenfeld & Co.* v. *Solomon*, 61 Misc. Rep. 238; *Shepard* v. *Mayor*, 13 How. Pr. 286; *Taylor* v. *Simpkins*, 38 Misc. Rep. 246; *Daily Realty Co., Inc.,* v. *Schmuck*, 90 Misc. Rep. 631.)

LEHMAN, J. On January 31, 1922, the plaintiff entered into a contract whereby he purchased from S. G. Kelsey of London, England, 4,000 shares of preferred stock and 4,000 shares of common stock of Asbestos Mines, Ltd. The purchase price was $40,000, payable six years from the date of the contract, but the buyer received the option, during that period, " of paying the purchase price in full at any one time or of making partial payments in any amount from time to time." Interest upon the balance due was payable semi-annually, and provision was made that in the event of thirty days' default in the payment of interest, the total unpaid balance of the purchase price should become due and payable. The contract provided that upon the signing of the contract, delivery of the stock certificates, indorsed by the seller to the buyer, should be made to a bank which should hold the same " in escrow as collateral security subject to the

terms of the agreement," and should deliver the securities to the buyer upon payment in full of the purchase price. It was expressly stated in the agreement that " Title to said securities shall become vested in the Buyer upon receipt of said securities by the Depositary; and all dividends, whether in cash, or in shares, or otherwise, and all other increase, profit or benefit accrued or accruing on said securities from the date hereof, shall become the property of the Buyer."

On the same date the plaintiff made a contract with the defendant by which he sold, assigned and transferred to the defendant one-half the securities purchased by the plaintiff under his contract with Kelsey, which is expressly incorporated, by reference, into the contract with the defendant. The buyer agreed to pay to the seller one-half of the consideration price named in the Kelsey contract, together with one-half of the interest and other charges reserved or referred to in said Kelsey contract " within ten days after the Seller has notified the Buyer that the Seller, *pursuant to the said Kelsey contract*, has made such payments on account of principal, or interest, or charges." (Italics are ours.)

The stock was deposited by Kelsey with the bank, and interest charges were paid for two years. Though the plaintiff's contract with the defendant provided that the defendant should pay his half share of the purchase price and interest charges reserved in the Kelsey contract within ten days after the seller notified the buyer that the seller " pursuant to the said Kelsey contract has made such payment," the parties did not adhere to the letter of the contract in meeting the first four semi-annual payments of $1,200 interest. As these came due, the plaintiff would send the defendant his check for $600. The defendant then added his check for the same amount and sent the full sum of $1,200 to Kelsey. When the fifth semi-annual payment of $1,200 was about to become due the defendant refused to make any payment not

called for by his contract. The plaintiff failed to meet that interest payment. Kelsey declared the full purchase price due and brought suit against the plaintiff in a Canadian court to recover the sums due under the contract. Judgment was entered in that action for $40,425, and execution issued against the plaintiff. He paid $10,000 on account of the judgment, then a settlement was effected upon the total payment by plaintiff of $36,834.60.

Pending this settlement and payment, the stock remained in the possession of the bank as collateral security for the payment of the purchase price. Thereafter the plaintiff obtained the stock, tendered one-half of the certificates to the defendant, and demanded from him one-half of the sum paid by him to Kelsey in settlement of the judgment and of his obligation under the Kelsey contract. The defendant refused to accept the certificates or to pay to the plaintiff any further sums under his contract. Then the plaintiff brought this action.

We have stated the facts as they appear in the plaintiff's testimony. At the close of that testimony the complaint was dismissed on the ground that under the defendant's contract, he was obligated to pay to the plaintiff only one-half the payments made by plaintiff to Kelsey " pursuant to the said Kelsey contract," and that the plaintiff defaulted under that contract and subsequent payments were made not " pursuant to that contract " but in settlement of a judgment obtained against the plaintiff.

We think that the dismissal rests upon too narrow a construction of the defendant's obligation. The plaintiff transferred to the defendant one-half the shares of stock which he had bought from Kelsey. Title to Kelsey's stock passed to the plaintiff at the time of delivery to the bank. The bank held the stock only as collateral security for the payment of the contract price and

charges. On the same day title to one-half of the pledged stock passed to the defendant under his contract of purchase from the plaintiff. For that half the defendant agreed to pay to the plaintiff one-half of the purchase price which the plaintiff must pay to Kelsey to obtain possession of the stock. The plaintiff did not expressly agree with defendant to perform his contract with Kelsey, but the plaintiff did agree that the obligation of the defendant was limited to payment of one-half the amount which plaintiff paid " pursuant to the said Kelsey contract." We find no implication in that language that strict performance of the plaintiff's obligation to Kelsey was to be a condition precedent to recovery against the defendant. The defendant was interested in obtaining a release of his stock from the lien of its pledge as collateral security for payment of the agreed purchase price to Kelsey. All payments provided for in the Kelsey contract and made and accepted by Kelsey on account of the contract price fixed by the agreement, are payments made " pursuant to the contract " even though because of previous defaults, Kelsey might possibly have attempted to rescind the contract with him. The test is whether plaintiff's contract with Kelsey was at the time of such payment still in existence, so that the payments accepted by Kelsey served *pro tanto* to release the stock held as security for the payments called for by the contract.

Here the plaintiff's previous default under the contract with Kelsey had resulted in Kelsey declaring the full purchase price due and bringing an action to recover that price. That action did not terminate the contract of sale. On the contrary, it was based upon the existence of the contract and was brought to enforce the obligation of the contract. (*D'Aprile* v. *Turner-Looker Co.*, 239 N. Y. 427.) Title to the stock still remained in the plaintiff or plaintiff's assignee, and the stock was still held as security for the purchase price. Even though in a sense the original obligation of plaintiff to Kelsey

was merged in the judgment, the "judgment does not obliterate the essential features of the obligation on which it is rendered." (*Murphy* v. *Manning*, 134 Mass. 488.)

We are concerned not with the juristic result of a merger of a contractual obligation in the judgment obtained to enforce the obligation, but with the intent of the plaintiff and defendant as embodied in the language of their contract. Here the intent seems clear. The plaintiff's payment in satisfaction of the judgment operated also as a satisfaction of the purchase price which he had agreed to pay under the contract with Kelsey and for which the stock was held as security. Under the terms of that contract the plaintiff had the option to pay the full purchase price at that time. If without prior default, the plaintiff had chosen to avail himself of that option, the defendant would have had no right to complain, and the payment by plaintiff would, beyond possibility of dispute, have constituted a payment pursuant to his contract. Its character was not changed because it was made under compulsion of a judgment. Kelsey accepted a smaller sum in satisfaction of a larger contractual obligation, but the payment operated to discharge the obligation created by the contract, was made pursuant to the terms of the contract, and operated to release the stock from Kelsey's lien. The defendant has received exactly what the plaintiff agreed to give him, and must pay exactly what he agreed to pay the plaintiff. The plaintiff made out a *prima facie* case for the recovery of one-half the purchase price he paid to Kelsey.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.