AMTORG TRADING CORP. v. MIEHLE PRINTING PRESS & MFG. CO. OF DELAWARE.

United States District Court
S. D. New York.
Aug. 29, 1952.

Wolf, Popper, Ross & Wolf, New York City, for plaintiff.

McLaughlin, Russell, Bullock & Lark, New York City, for defendant.

## SUGARMAN, District Judge.

Amtorg Trading Corporation, (hereinafter called Amtorg), as plaintiff herein, and Miehle Printing Press & Manufacturing Company (of Delaware), (hereinafter called Miehle), as defendant herein, each move for summary judgment. The complaint alleges six causes of action arising from dealings between the parties after Amtorg and Miehle's predecessor contracted for the sale to Amtorg of thirty printing presses, twenty of which for reasons hereinafter set forth, Amtorg refused to accept. For all purposes herein, Miehle's rights and obligations under the contract and subsequent dealings with Amtorg are identical with Miehle's predecessor's.[1]

The contract called for the manufacture by Miehle of thirty printing presses and their delivery with spare parts to defendant, F.O.B. railroad cars, Milwaukee, Wisconsin. Ten presses were to be delivered by February, 1948; ten more by March, 1948; and the final ten in April, 1948. The portion of the total price of $352,035.90, allocable to each group of presses, was payable by Amtorg on delivery to it of copies of the bills of lading, invoices and other specified documents respectively relating to each of the three deliveries. At the time of contract, August 1, 1947, twenty-five percent of the entire purchase price, to wit, $88,008.87, was paid in advance by Amtorg to Miehle. The parties knew at that time that the presses were being bought by Amtorg for export to and re-sale in Russia. These presses were to be specially manufactured with certain features peculiar to presses used in U.S.S.R.

In February, 1948, the first ten presses were completed and delivered according to contract, and Amtorg paid the balance due on them, a credit of twenty-five percent of the contract price of these ten presses being allowed by reason of the above-mentioned prepayment. Miehle then had on hand $59,946.47 to be applied to the purchase price of the remaining twenty presses.

At the times specified in the contract, the balance of twenty presses were finished by Miehle and tendered to Amtorg, but prior thereto and on March 1, 1948, there became effective Department of Commerce Regulations[2] requiring a license from the Department of Commerce to ship them to Russia. These Regulations were promulgated in January, 1948.

Application for appropriate export licenses had been made by Amtorg on February 10, 1948, and although Miehle, by letter dated March 22, 1948, urged granting of Amtorg's request, the Department of Commerce rejected the application on June 14, 1948.

While the application was pending and in May, 1948, Miehle informed Amtorg that it held the presses subject to Amtorg's order and on its account, tendered delivery and demanded payment. Upon Amtorg's refusal to accept delivery pending action on the application for export licenses, Miehle commenced an action against Amtorg in the Supreme Court, New York County, claiming that Amtorg breached its contract with Miehle when it refused tender of the presses. In its amended complaint Miehle claimed as damages the contract purchase price of the twenty presses and spare parts less Amtorg's prepayment of $59,946.47, on the theory that these specially manufactured presses had no re-sale value. Amtorg's amended answer pleaded an affirmative defense of "frustration" of the contract because of its inability to obtain export licenses and by way of counterclaim sought to recoup the prepayment because of this alleged "frustration".

1. Miehle Printing Press & Manufacturing Company (of Illinois), hereinafter also called Michle.

2. Pursuant to the Export Control Law of 1940, as amended, 50 U.S.C.A.Appendix, § 1151 et seq.

Miehle moved for summary judgment striking Amtorg's answer and dismissing its counterclaim. In granting this motion, Justice Nathan said:

"It is perfectly clear that both parties knew that defendant purchased the goods in question for the purpose of shipping them to the U. S. S. R. But what were the obligations of the contract? The seller was to make delivery F. O. B. in Milwaukee and the buyer was to make payment in New York upon such delivery. Neither party assumed any obligation in this contract with respect to shipment out of the country. All that the seller undertook to do was to place the goods on board railroad cars in this country suitably marked and with bills of lading properly executed. Any instructions as to trans-shipment were entirely in the discretion of the buyer or the buyer's shipping agent. Certainly, if defendant so desired, it could have designated any place in this country or any other country as the ultimate destination without any consent or approval from plaintiff. The contract provided for complete performance in this country and the court cannot go beyond the four corners of the agreement to include therein a guarantee of fulfillment of the purpose for which the buyer intended to use the goods even though such purpose was known to the seller. The seller cannot be made to bear a loss, the risk of which he did not assume in his contract simply because the buyer has been prevented from accomplishing the purpose for which he intended to use the goods." [3]

An assessment of damages by an official referee was ordered. On appeal, by order dated April 5, 1949, the Appellate Division, 88 N.Y.S.2d 271, without opinion affirmed the order granting Miehle's motion for summary judgment.

However, before the affirmance was handed down, Miehle, in October, 1948, sold the twenty presses to the United States Bureau of Printing & Engraving for $250,000. Thereafter, Miehle moved for leave to discontinue its action against Amtorg without prejudice. This motion was granted and the order entered thereon, dated May 15, 1950, was affirmed by the Appellate Division by order dated March 13, 1951. 278 App.Div. 682, 103 N.Y.S.2d 493.

Simultaneously with Miehle's motion for a voluntary discontinuance, Amtorg moved for leave to serve a supplemental answer counterclaiming for the return of its partial prepayment on the ground that Miehle had sold the presses for an amount in excess of the contract price and that retention by Miehle of the advance payments would result in its unjust enrichment. The order denying this motion on May 4, 1950 was also affirmed by the Appellate Division on March 13, 1951.

In the instant action, Amtorg seeks in its first cause of action to recover back the prepayment of $59,946.47 paid to Miehle on the theory that the Regulations of the Department of Commerce requiring licenses to export these presses, frustrated the performance of the contract, vitiating it in its entirety and thereby entitling Amtorg to recover the sums advanced.

In its second, third, fourth, fifth and sixth causes of action, Amtorg seeks to recover, on inconsistent theories, $18,765, the amount in excess of the contract price realized by Miehle on the sale of the presses to the United States Bureau of Printing & Engraving, together with the $59,946.47 prepayment on the contract. Amtorg now moves for summary judgment on its first, second, fourth and sixth causes of action, conceding the existence of material issues of fact as to its third and fifth causes of action. Miehle now moves for summary judgment on each of Amtorg's causes of action.

The disposition of these motions hinges simply on the answer to the question: Was Amtorg's refusal to perform under the contract excused by the frustration of the ultimate object of the contract, namely, lawful export of the presses to

3. N.Y.L.J. September 10, 1948, p. 403.

Russia? If not, then Amtorg was a defaulting purchaser having no right to recover back advance payments and, as will hereinafter be shown, having no claim to profits made by the seller on a re-sale of the goods.

■ While the aforementioned decision of Justice Nathan in the prior litigation between these parties does not bind this court on the principle of *res adjudicata*, because that litigation terminated in a voluntary discontinuance, this court is nevertheless bound by the conclusions of law of the State Court insofar as they flow from identical fact situations on the principle of *stare decisis*[4], this court's jurisdiction resting on diversity of citizenship.[5] Accordingly, following Justice Nathan's decision, affirmed by the Appellate Division[6], Amtorg's first cause of action to recover the prepayment of $59,946.47 is dismissed because it was a defaulting purchaser.[7]

This default is also fatal to Amtorg's second, third, fifth and sixth causes of action, inasmuch as each of these claims is in effect an attempt to recover the prepayment on the theory that it was not in default. The second and third causes of action are not saved, as will be hereinafter shown, merely because Amtorg also seeks therein Miehle's "profit" of $18,765

on the re-sale of the presses to the United States Bureau of Printing & Engraving.

In the fourth cause of action, Amtorg alleges in substance that in April, 1948, Miehle notified Amtorg that Miehle held the presses as bailee for Amtorg, thereby passing title to Amtorg[8]; that thereafter, Miehle sold the presses at a "profit" of $78,711.47, (Amtorg's prepayment of $59,946.47 plus the $18,765, excess of the re-sale price over the contract price); and demands the $78,711.47, alleging that this "profit" is its property.

■ Assuming without deciding[9] that Miehle did become bailee of the goods for Amtorg's account, the latter's default in payment of the price continuing for an unreasonable time gave Miehle the right to re-sell the presses and any profit realized on such re-sale became Miehle's property.[10] Amtorg has no rights in the prepayment other than to demand that it be applied as a credit toward any deficiency on the re-sale, and there being no deficiency here alleged, Amtorg's rights in the advance payment are extinguished.[11]

Accordingly, plaintiff's motion for summary judgment is in all respects denied and defendant's motion for summary judgment dismissing each cause of action set forth in the complaint is granted.

Settle order.

4. American Machine & Metals v. De-Bothezat Impeller Co., 2 Cir., 180 F.2d 342, certiorari denied 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1383.

5. Amtorg seeks to escape this result by urging that "Federal law" governs this court in deciding whether the object of the contract has been frustrated, contending that Federal jurisdiction in this action is grounded on the allegation of the complaint that the action arises under the laws of the United States.a This contention is without merit. "A case in law or equity. * * * may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either".b In the instant case, there is no question of *construction* of Federal law, but rather its effect on the rights of these parties. The action arises out of an ordinary commercial

transaction between them and jurisdiction is based solely on diversity of citizenship.c

a. 28 U.S.C.A. § 1331.

b. Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257.

c. 28 U.S.C.A. § 1332.

6. 275 App.Div. 748, 88 N.Y.S.2d 271.

7. Pirman v. Kurtz, 267 App.Div. 258, 45 N.Y.S.2d 508.

8. N. Y. Personal Property Law, McK.Consol.Laws, c. 41, § 144.

9. Miehle denies that it notified Amtorg that it held the presses for Amtorg as bailee.

10. N. Y. Personal Property Law § 141(1).

11. D'Aprile v. Turner-Looker Co., 239 N.Y. 427, 147 N.E. 15, 38 A.L.R. 1426.