417 P.2d 542

**CONTRACTOR & MINING SERVICE & SUPPLY, INC., an Arizona corporation, Appellant,**

**v.**

**H & M TRACTOR & BEARING CORP., a foreign corporation, Appellee.**

**No. 2 CA–CIV 163.**

Court of Appeals of Arizona.

Aug. 12, 1966.

Rehearing Denied Sept. 9, 1966.

Review Denied Oct. 18, 1966.

Moore, Vlahovich & Greenwood, by Dushan S. Vlahovich, Bisbee, for appellant,

Russo, Messing & Cox, by William Messing, Tucson, for appellee.

KRUCKER, Chief Judge.

The appellee, plaintiff below, brought an action against the appellant, defendant below, to recover the purchase price of goods sold under a contract of sale. The issue went to trial on March 25, 1965, and on April 19, 1965, judgment was entered in favor of the appellee and against the appellant in the sum of $1,430.29, the full purchase price of the goods ordered. A motion for new trial was filed and denied and this appeal taken. The appellee-plaintiff will be referred to as seller and the appellant-defendant as buyer.

The seller, a Los Angeles firm, is a discount house selling bearings for machinery. Prior to the sale in question, the buyer visited and inspected the seller's place of business in California, was given a tour of the premises, examined its products and discussed prices and terms.

On September 27, 1963, the buyer ordered certain bearings from the seller for resale to its customers. The order was given over the telephone and confirmed by a purchase order from the buyer listing the specific bearings ordered by number, dated September 27, 1963. On or about September 30, 1963, the seller shipped the bearings from Los Angeles to Tucson by motor carrier and submitted an invoice therefor in the amount of $1,430.29. The invoice contained a provision that the sale was to be considered complete unless the merchandise was returned in five days.

The bearings were delivered to the buyer's business in Tucson on or about October 3, 1963, and the record indicates that they remained on the buyer's shipping dock for several days before being shipped to the buyer's parent organization in Bisbee. The bearings were not inspected until approximately the first week in November 1963, when according to the buyer, it was discovered that the bearings were used rather than new. The buyer notified the seller by letter dated November 5, 1963, that all the bearings were being returned since they were used, not new, and were "junk", unfit for use in the buyer's business. On November 22, 1963, the buyer forwarded another letter to the seller explaining that the merchandise agreed to be purchased was to be new, that the bearings sent were used and reconditioned rather than new, that they were·being returned and that the seller should issue credits for the merchandise to clear its books. Attached to this letter was the prepaid bill of lading for the shipping charges returning the merchandise. The bill of lading was dated November 13, 1963.

When the bearings arrived in California, the seller refused to accept them and they were then stored by the freight company until about April 22, 1964, when the seller had the goods delivered to its place of business in order to save the costs of storage.

The seller's complaint to recover the purchase price of the bearings was filed in January 1964, prior to the acceptance of the return of the bearings. Although attempts were apparently made to sell the bearings, the efforts failed and the seller still has possession of the merchandise. The trial court granted judgment in favor of the seller for the full purchase price of the bearings.

Our consideration of the questions raised by the buyer for review has led to the conclusion that three key issues are determinative of this appeal; i. e., since the seller has admitted that a warranty existed that the bearings were to be new, was the warranty

breached by the seller; what were the conditions for rescission of the sale contract by the buyer; and, can the seller obtain a judgment for the full purchase price under a contract of sale when he is in possession of the merchandise?

■ Regarding the buyer's allegation that the seller's warranty that the bearings were to be new was breached, since findings of fact and conclusions of law were not requested, made or stated, this Court must "view the record as though the trial court had found every controverted issue of fact necessary to support the judgment", Gabitzsch v. Cole, 95 Ariz. 15, 17, 386 P.2d 23, 24 (1963), "and, if there is reasonable evidence to support such findings, hold that it did so correctly." Silva v. De Mund, 81 Ariz. 47, 50, 299 P.2d 638, 640 (1956). In addition, "all inferences supported by the evidence will be taken in favor of appellee." Rosen v. Hadden, 81 Ariz. 194, 196, 303 P. 2d 267, 268 (1956).

■ It should be noted that "(w)here the buyer refuses to accept the goods as being of a quality inferior to that contracted for, the burden is on the seller, in an action for the price of the goods or for damages, to show that the goods are of the agreed quality." 77 C.J.S. Sales § 204(a), page 950 (1952). Also see 77 C.J.S. Sales § 166(c) (1952).

■ Mr. Hammer, the seller's manager, testified that during Mr. Mosier's visit to the seller's facilities in California, they had discussed the five day provision on the invoice for the return of the merchandise, that Mr. Mosier requested two weeks for inspection and return rather than the five days and that this period was agreed to. It was further testified that payment was discussed and that thirty days was to be allowed for payment at the discount price but that no payments were made; that he called Mr. Mosier about 35 days after shipment of the bearings, requesting payment; that nothing was said at that time about the merchandise being used and that Mr. Mosier assured him that he would have a check in 48 hours; that the merchandise was new and "that is the only thing that we handle"; that when the bearings were packed for shipment he was present with two employees and that since they did not "sell very much of the big material, big wheels, and big wheel bearings", he remembered that particular shipment and the bearings shipped were new.

On the basis of this testimony, the trial court could readily have determined that the merchandise supplied by the seller was new merchandise and that no breach of the warranty occurred. We cannot speculate as to the trial court's findings and conclude that the record contains sufficient evidence to support the judgment of the trial court and we do not consider the controverted evidence a sufficient basis for reversal.

■ Regarding the buyer's attempted rescission of the sales contract for the alleged breach of warranty, the seller's manager testified that although their usual business procedure was to allow five days for the return of merchandise, after which its return would not be accepted, during conversations between buyer and seller before this order for bearings was placed, it was agreed that if problems developed the bearings could be returned within two weeks from the date of delivery. In fact, however, the bearings were not inspected until about one month after delivery and not returned by the buyer until approximately six weeks after the date of delivery.

"It is the duty of the seller to deliver the goods, and of the buyer to accept and pay for them, in accordance with the terms of the contract to sell or sale." A.R.S. § 44–241. Regarding inspection of merchandise purchased, A.R.S. § 44–247 provides in part:

"A. Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract.

"B. Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford

the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract."

As noted, the seller testified that the parties to the sales contract had agreed that two weeks would be allowed for the inspection and return of the bearings.

"The parties may stipulate in a contract of sale with respect to the time within which the buyer may give notice of defects, and ordinarily where the contract or a statute specifically provides as to the time within which such notice must be given it must be given within the time fixed in order that the purchaser may rely on a breach of warranty. It has been held that the effectiveness of a contractual limitation on the time within which a buyer must give notice of defects should be determined in accordance with rules of reasonability, and that if the defects are of such a kind as to be patent or apparent on examination a contractual stipulation requiring notice of claims within a specified time will be binding, but that, where the defects are latent and not readily discoverable on inspection, no unreasonable provision with respect to the time for presentment of claims will be given effect." 77 C.J.S. Sales § 339(b), pages 1228–1229 (1952).

There is nothing in the record to indicate that the defects in the bearings were "latent and not readily discoverable on inspection"; there was testimony from the buyer that upon visual inspection and examination of the bearings, he noted "puller" marks indicating that they were used and reconditioned rather than new. Thus, to rely on an alleged breach of warranty to supply new bearings, the buyer was bound by the contractual provisions for inspection and return of the bearings. 77 C.J.S. Sales § 339 (1952).

Assuming that the trial court did not find a breach of warranty, that court may have concluded that the contract of sale called for inspection and return of the bearings within a two week period, that such a period was reasonable under the provisions of A.R.S.

§ 44–247, and that the buyer's failure to inspect and return the bearings within this period constituted a waiver of the condition and acceptance of the merchandise. The buyer's failure to exercise a right to reject the goods or to return them to the seller within a reasonable time usually implies an acceptance. 77 C.J.S. Sales § 224 (1952). "So, a failure to return unsatisfactory goods 'promptly,' as required by the contract, constitutes an acceptance." Id., page 993.

The buyer next alleges that the seller cannot recover because it accepted the return of the bearings, it currently has them in its possession, it has exercised dominion over them by attempting to sell the bearings, and did not notify the buyer that it was holding them as bailee for the buyer. Thus, it is contended, the contract of sale was fully rescinded by the buyer and the seller cannot maintain an action for the purchase price.

The authority cited for this position is not in point with the facts of this case. It is true that under some circumstances, "it is a good defense to an action for the purchase price that the goods have been retaken by the seller; that after the buyer had refused to accept the goods the seller had retained or retaken them as his own". 78 C.J.S. Sales § 443(f), page 69 (1952). This is not the situation in this case, however. The record before us reveals that the seller refused to accept the return of the bearings, they were placed in storage by the trucking company, the seller filed suit to recover the full purchase price thereof and some four months thereafter, the goods were returned to the seller.

A.R.S. § 44–263 provides the conditions under which the seller may bring suit for the purchase price of goods. The statute provides in part:

"A. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain

an action against him for the price of the goods."

We have previously noted that the record contains ample evidence from which the trial court could conclude that the buyer's failure to inspect and return the bearings within a reasonable time after delivery constituted an acceptance thereof. Thus, the property in the bearings passed to the buyer. Furthermore, the seller, on a buyer's breach of a contract of sale, may treat the contract broken and recover damages, or treat it as existing and recover the purchase price, or treat it as rescinded and recover the merchandise. Boyd v. Second-Hand Supply Co., 14 Ariz. 36, 123 P. 619 (1912). We believe the facts of this case are fully consistent with the conclusion that the buyer treated the contract as existing and therefore brought suit for the purchase price, holding the bearings as bailee for the buyer. The seller's conduct thereafter is also consistent with his duty to mitigate damages. 78 C.J.S. Sales § 483 (1952). Furthermore, bringing an action for the price of goods does not prevent the seller from exercising his right of resale. D'Aprile v. Turner-Looker Co., 239 N.Y. 427, 147 N.E. 15, 38 A.L.R. 1426 (1925).

■■ One additional issue must be considered, i. e., the buyer's allegation that the trial court erred in refusing to permit the buyer to amend its pleadings. The record discloses that the buyer filed two motions for leave to file an amended answer and counterclaim based on fraud, both motions being denied. However, these motions were filed on December 7, 1964, and January 26, 1965, well after the pre-trial order was issued on August 31, 1964, and further discovery precluded under Rule V, Uniform Rules of Practice, 17 A.R.S. The reception of amended pleadings is within the due discretion of the trial court and we find no basis for concluding that the record before us indicates an abuse of such discretion. Swift v. City of Phoenix, 90 Ariz. 331, 367

P.2d 791 (1961); Baxter v. Harrison, 83 Ariz. 354, 321 P.2d 1019 (1958); Wilson v. Byrd, 79 Ariz. 302, 288 P.2d 1079 (1955); White v. White, 78 Ariz. 397, 281 P.2d 111 (1955); Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941 (1951).

The judgment of the trial court is accordingly affirmed.

HATHAWAY and MOLLOY, JJ., concur.